IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

Deana Thompson,                   )
                                          )

        Plaintiff,               )
                                            )

        vs.                   )    Civil Action No. 10-234
                                            )

Tractor Supply Company,      )
                                            )

        Defendant.            )
                                            )

AMBROSE, Senior District Judge

**OPINION**
**AND**
**ORDER OF COURT**

Plaintiff, Deana Thompson ("Plaintiff" or "Thompson"), initiated this action against her former employer, Defendant Tractor Supply Company ("Defendant" or "TSC"), alleging discriminatory treatment on the basis of sex and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.* ("PHRA"). Pending before the Court is Defendant's Motion for Summary Judgment seeking dismissal of Plaintiff's claims in their entirety. (Docket No. 21). Plaintiff opposes Defendant's Motion. After careful consideration of the parties' submissions, Defendant's motion is denied.

## I. INTRODUCTION

### A. Factual Background

Unless otherwise indicated, the following material facts are undisputed.

### 1. Plaintiff's Employment History

Thompson began her employment with TSC on November 11, 2004. Thompson worked first as a cashier at TSC's Follansbee, West Virginia, store. She then was promoted into a

"Receiver" position in 2005.  The receiver is responsible for loading/unloading, inventory, and floor placement of merchandise.  In April 2007, Thompson was promoted to Assistant Store Manager at the Follansbee store.  As Assistant Manager, Thompson supervised cashiers, team leaders, team members, and the receiver.  According to District Manager Don Hamar, Thompson had a very good rapport with customers.

### 2.  Hamar's Alleged Conversation with Luann Duplinsky

In support of her sex discrimination claim, Thompson offers the affidavit of TSC customer Luann Duplinsky.  See Pl.'s App'x (Docket No. 31) Ex. 2 ("Duplinsky Aff.").  In her Affidavit, Duplinsky avers that in or around 2007,[1] she spoke with Hamar at TSC regarding a complaint she had about horse food.  Duplinsky Aff. ¶ 2.  Duplinsky states that during the conversation, she mentioned to Hamar that a woman should be manager of the store and asked "why don't you make Deana [Thompson] a manager?"  Id. ¶¶ 3-4.  According to Duplinsky, Hamar responded, "As long as I'm district manager, there will never be a woman in charge."  Id. ¶ 5.  According to TSC, Hamar denies knowing Ms. Duplinsky and denies that such a conversation ever took place.[2]

### 3.  December 2008 Store Manager Position

In December 2008, the Store Manager position became available at the Follansbee store.  In hiring a store manager, Hamar looks for someone with good leadership abilities, a command presence, and someone who can execute and follow directions.  Experience with the store is also a factor.  Hamar looks at how the employee has performed in other positions, and

---

[1] Duplinsky states that the incident took place in 2006 or 2007.  Duplinsky Aff. ¶ 2.  Duplinsky also avers that Thompson was the Assistant Manager at the time of the comment.  Id. ¶ 4.  Thompson became Assistant Manager in April 2007.

[2] TSC cites page 62 of Hamar's deposition in support of its position that Hamar denies making this statement to Duplinsky.  See Def.'s Resp. to Pl.'s Concise Statement of Facts (Docket No. 36) ¶¶ 20-22.  Page 62, however, is not attached to either TSC or Thompson's submissions.

"if they have worked themselves up through the company, starting off as a team member working themselves up." Hamar Dep. at 15-16. Customer service ability also is taken into consideration. In addition, TSC looks for "lifestyle experience" – *i.e.*, outside experience as a farmer, a rancher, a horse owner, or a welder – because it helps managers relate to the customers more effectively.

Hamar knew from past conversations with Thompson that she was interested in becoming store manager. On December 15, 2008, Hamar asked Thompson during a phone conversation if she was interested in the store manager position, and Thompson said yes. At this time, Hamar also had Clement Young in mind for the position. Young had begun his employment with TSC in January 2008 as Assistant Manager in the Glendale, West Virginia store. In December 2008, Young was an Assistant Manager in TSC's Wheeling, West Virginia store and had worked for TSC for less than a year. Prior to working for TSC, Young spent over 30 years in the military with a supervisory rank. Young also grew up on a farm and currently owns and operates a farm ("lifestyle experience"). Thompson states that she also had lifestyle experience. Specifically, Thompson avers that she has lived on a farm since birth and, for the past 25 years, has handled livestock. Pl.'s App'x (Docket No. 31) Ex. 1 ("Thompson Aff.") ¶¶ 1-5. Thompson also states that she has experience installing and repairing fences, cutting and baling hay, operating farm equipment, and working with furnaces. Id.

Thompson did not receive the store manager promotion. Instead, Hamar promoted Young who, in January 2009, began working as Store Manager at Follansbee. Hamar testified in his deposition that one reason he selected Young was because he felt that Young held staff members more "accountable" than Thompson who was "more a friend with her team." Hamar Dep. (Docket No. 23-1) at 43. In its position statement to the Equal Employment Opportunity Commission ("EEOC") and its initial Answers to Interrogatories, TSC claimed it promoted Young over Thompson because Young's store had significantly better "numbers," including sales,

profits, and "shrink"[3] and because TSC determined that Thompson lacked the leadership qualities essential to becoming a productive store manager and that she needed to further develop those skills. Pl.'s App'x Exs. 16 (Position Statement) and 6 (Answers to First Interrogatories).[4] Following depositions in this case, TSC "supplemented" the above interrogatory response. The amended interrogatory response eliminates mention of store numbers as a factor and indicates, *inter alia*, that "[i]t was determined that Young was the better of the two candidates at that time, and that Thompson needed to further develop her management skills before moving into a Store Manager role." Pl.'s App'x Ex. 19 (Supplemental Answers to First Interrogatories). The supplemental response also referred Thompson to "the deposition testimony of Don Hamar on this issue." Id.

Hamar advised Thompson of his decision to promote Young during a meeting in December 2008. Immediately before he informed Thompson about his decision, Hamar had been approached by a co-worker of Thompson's by the name of Orville Crawford, who asked Hamar what it would take for a woman to be a manager of a Tractor Supply Store. Hamar was under the impression that Crawford and Thompson had discussed Thompson's belief that she was not promoted because of her gender. Hamar testified that he was concerned by Orville's remark, but was not upset or angry about it. Hamar Dep. at 56. At his meeting with Thompson, Hamar specifically told her that his decision was not based upon gender.[5] Thompson testified

---

[3] "Shrink" refers to the amount lost compared to sales. If something is stolen from a store, the shrink rate is higher. Hamar Dep. at 27.

[4] Thompson contends that Young's store actually had lower sales and profits than her store. Pl.'s Statement Material Facts (Docket No. 30) ¶6 (citing Company Income Statements, Pl.'s App'x Exs. 7-8).

[5] The parties disagree as to the exact reason Hamar gave to Thompson for her non-promotion at the December 2008 meeting. In her Affidavit, Thompson avers that Hamar told her he decided not to promote her because of the store's inventory numbers which she claims had been affected by theft by a former store manager. Thompson Aff. ¶ 14. Hamar testified that he told Thompson he promoted Young based on "business" reasons and because TSC thought Young was "the right candidate for the job." Hamar Dep. at 56.

that she told Hamar that she "understood why Orville felt the way he felt" and that she agreed with Orville's remark. Thompson Dep. (Docket No. 31-1) at 53-54.[6] From this conversation, Hamar believed that Thompson thought that she was not promoted because of her gender.

After Young's promotion, Thompson remained employed as the Assistant Store Manager at the Follansbee store, but her managers believed that she had the potential to be promoted at some point in the future. No one at TSC ever told Thompson that she would not become a store manager, and Hamar specifically informed Thompson that there was opportunity for her promotion in the future. Young found Thompson to be supportive as he transitioned into the store manager role.

In January 2009, the Follansbee store was reassigned from Hamar's region to Area Manager Gerald ("Jerry") Robinson's region. Robinson testified that at some point after the promotion decision but prior to Thompson's termination from employment, Hamar told him that Thompson believed she was not promoted because she was a woman. Robinson Dep. (Docket No. 31-2, Ex. 9) at 10-11.

### 4. **February 5, 2009 Incident**

On February 5, 2009, Thompson was scheduled to work from 12:00 p.m. to 11:00 p.m. Because Thompson was working more than 10 hours, she needed to take two 30-minute lunch breaks. She therefore worked roughly 5 hours, combined her two lunches, and worked roughly another 5 hours. Thompson testified that she told the Receiver, Misty Sayers, that she was going to take an extended lunch and that she left Sayers in charge of the store while she was gone. Thompson told Sayers to call her on her cell phone if she had any problems. Sayers had no problem with Thompson taking an extended lunch, and felt confident to look over the store while Thompson was gone. Sayers did not believe it was out of the ordinary for Thompson to tell her she was going to be left in charge during Thompson's lunch break.

---

[6] Hamar denies that this portion of his conversation with Thompson ever took place. Hamar Dep. at 58-59.

Thompson clocked out on her lunch break from 4:52 p.m. to 6:31 p.m., or approximately 1.5 hours. Thompson admits that she had never left the store for that length of time before. Thompson also admits that she understood that TSC policy required that someone with a key to open and close the store in case of emergency (a "key carrier") had to be present in the store at all times. As the Assistant Manager, Thompson was given – and was responsible for – keys to the front door, back door, office and outside gate. The Store Manager and Team Leaders also carried store keys. Young was not working on February 5, 2009, and Team Leader Tonya Francis was only scheduled until 3:30 p.m. Thus, at the time of her lunch break, Thompson was the only official key carrier on duty.[7]

While Thompson was gone, she received a call at the store from Robinson. When Robinson was told during the phone call that Thompson was at lunch, he said he would call back. Robinson called back about 45 minutes later to talk to Thompson, but was told she had not yet returned to the store. Robinson testified at his deposition that "well over an hour" after his first call, he called the store yet a third time, and again was told that Thompson was gone. Robinson Dep. (Docket No. 23-1) at 19.[8] Robinson understood that Sayers had been left in charge of the store during Plaintiff's absence. Robinson testified that he believed a "member of management must be in the building at all times" and that he did not believe Sayers had managerial duties or that she was a designated key carrier. Robinson Dep. at 18, 28, 40-41.

_____

[7] Prior to becoming Receiver, Sayers had been a Team Leader and an official key carrier at the Follansbee store. Sayers took the Receiver position in or around April 2007, but remained classified as a Team Leader in her personnel paperwork until February 2009. When Sayers became the Receiver, she did not immediately give up any of her keys. When Chuck Wadium (Young's predecessor) became manager, he asked Sayers to return her keys, and Sayers returned the key that opened the front door and the office. She retained a key that locked cases inside the store and the receiver roll-up doors. There is conflicting testimony as to whether Sayers actually was carrying front door keys on February 5, 2009. Robinson testified that he did not know whether Sayers possessed keys on that date. Robinson Dep. at 15-16.

[8] Citing Misty Sayers' deposition testimony, Plaintiff disputes that Robinson called the store a third time. See Pl.'s Resp. to Def.'s Statement of Material Facts (Docket No. 29) ¶ 26 (citing Sayers Dep. at 15).

The parties admit, however, that managers had routinely left Sayers in charge of the store and that both Thompson and Sayers explained this fact in written statements before Thompson's discharge. When Thompson left Sayers in the store, Sayers was still classified as a "Team Leader" in her personnel paperwork. Two days before Thompson's discharge, Young changed Sayers's classification from "Team Leader" to "Receiver," and Robinson approved the change. Pl.'s App'x (Docket No. 31) Exs. 14-15.

### 5. Plaintiff's Termination from Employment

On February 10, 2009, Meredith Williams, a TSC Human Resources representative, interviewed Thompson by phone about the events of February 5. Clem Young also was present during the phone call. Thompson told Williams during the interview that she had left the store to take care of a "personal" issue. Although Thompson did not elaborate on the nature of the personal issue at the time, she contends that no one ever asked that she divulge that information. Following her conversation with Thompson, Williams also spoke with Young and Sayers. Both Thompson and Sayers provided written statements at Williams' request. In her statement, Thompson wrote, inter alia, that Sayers was a designated key carrier; that she left Sayers in charge because she had a personal issue that required immediate attention; and that Sayers had been a team leader or designated as team leader for years and was used to open and close the store in the past by managers. See Pl.'s App'x Ex 12. Sayers wrote, inter alia, that she did not know at the time that it was not alright for a key carrier to take a lunch or leave the store when he or she was the only key carrier on duty. She also stated that she was usually called to the floor so that a manager or key carrier could go to the bank or to lunch. See Pl.'s App'x Ex. 13. Robinson saw Thompson's statement prior to firing her.[9]

---

[9] Then-Team Leader Tonya Francis also supplied a written statement to Williams. See Pl.'s App'x Ex. 28. Francis wrote that she knew a manager or key carrier was required to be on duty at all times. Id. Francis testified at her deposition, however, that she was surprised Thompson was being investigated for leaving Sayers in the store while at lunch, and could not believe the policy was being enforced that way. See

On February 12, 2009, Young informed Thompson that her employment with TSC was terminated. TSC contends that Robinson made the termination decision.[10] The "Team Member Counseling Form" documenting the termination lists the reason for the termination as: "Rather than contact the Store Manager for permission or direction, Deana left the store for 1.5 hours on 2/5/09, leaving the store without a manager on duty." Def.'s App'x (Docket 23-2) Ex. B. In its Concise Statement of Material Facts, TSC describes the reason as "a result of leaving the store unattended (without a 'key carrier'/managerial person in charge) for more than an hour and without checking for permission or direction before doing so." Docket No. 23 ¶ 39. Robinson testified that he considered giving Thompson a final written warning but that he fired her instead because he "thought the seriousness of leaving the store for well over an hour put all the team members in jeopardy." Robinson Dep. at 34. As set forth more fully below, Plaintiff disagrees with TSC's stated reasons and contends that those reasons are a pretext for gender discrimination and retaliation.

## B. Procedural History

On February 18, 2010, Thompson filed her Complaint against TSC. (Docket No. 1). Thompson filed an Amended Complaint on March 3, 2010. (Docket No. 4). On April 23, 2010, TSC filed its Answer to Thompson's Complaint. (Docket No. 6). On January 24, 2011, TSC filed the instant Motion for Summary Judgment and supporting materials. (Docket Nos. 21-23). On February 22, 2011, Thompson filed a Response to TSC's Statement of Material Facts, a Counter Concise Statement of Material Facts, Exhibits, and a Brief in Opposition to TSC's Motion. (Docket Nos. 28-32). TSC filed a Reply Brief to Thompson's Opposition and a Reply to

---

Francis Dep. (Pl.'s App'x Ex. 11) at 18.

[10] In its initial Answers to Interrogatories, TSC identified Don Hamar as the decisionmaker. Pl.'s App'x Ex. 6. At his deposition, Hamar denied any involvement in the termination decision and stated that the interrogatory answer was not true. Hamar Dep. at 68-71. TSC later "supplemented" the interrogatory answer at issue to list Robinson as the sole decisionmaker. Pl.'s App'x Ex. 19.

Thompson's Concise Statement of Material Facts on March 14, 2011. (Docket Nos. 35-36). Thompson filed a Sur-Reply Brief in Opposition on March 22, 2011. (Docket No. 42). The Motion is now ripe for my review.

## II. <u>LEGAL ANALYSIS</u>

### A. <u>Standard of Review</u>

Summary judgment may only be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

In considering a motion for summary judgment, this Court must examine the facts in a light most favorable to the party opposing the motion. <u>Int'l Raw Materials, Ltd. v. Stauffer Chem. Co.</u>, 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact. <u>Chipollini v. Spencer Gifts, Inc.</u>, 814 F.2d 893, 896 (3d Cir. 1987). The dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. <u>Id</u>. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. <u>Celotex</u>, 477 U.S. at 322. Once the moving party satisfies its burden, the burden shifts to the non-moving party, who must go beyond its pleadings, and designate

specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324. Summary judgment must therefore be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988) (quoting Celotex, 477 U.S. at 322).

**B. Sex Discrimination – Failure to Promote – Title VII and PHRA[11]**

Thompson alleges that TSC did not promote her to the Store Manager position in December 2008 because of her gender (female) in violation of Title VII and the PHRA. TSC argues that it is entitled to summary judgment as to Thompson's failure-to-promote claim because, even assuming Thompson could establish a *prima facie* case of discrimination, she cannot show that TSC's reason was a pretext for discrimination. For the reasons set forth below, I disagree.

Title VII prohibits employment discrimination based on an individual's sex. 42 U.S.C. § 2000e-2(a). A plaintiff may prove gender discrimination by direct evidence as set forth in Price Waterhouse v. Hopkins, 490 U.S. 228, 244046 (1989), as modified by the Civil Rights Act of 1991, or indirectly through the familiar burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). "Direct evidence" is evidence sufficient to allow the jury to find that "the decisionmakers placed substantial negative reliance on [gender] in reaching their decision." Price Waterhouse, 490 U.S. at 277. Statements by a non-decisionmaker or a decisionmaker unrelated to the decisional process itself are not direct evidence. See Price Waterhouse, 490 U.S. at 277.

Here, Thompson argues that Don Hamar's alleged 2007 remark to customer Luann

---

[11] My analysis of Thompson's Title VII claims applies equally to her gender discrimination claims under the PHRA. Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996).

Duplinsky that "as long as he was the manager, there would never be a woman in charge of the [Follansbee] store" constitutes direct evidence of gender discrimination within the meaning of Price Waterhouse.  Although Hamar is the decisionmaker at issue, TSC contends that his remark does not rise to the level of direct evidence because it was remote in time and was unrelated to the specific decisional process.  It is not necessary to decide this issue, however, because even if the comment is not direct evidence, it certainly is circumstantial evidence of a discriminatory motive, and, for the reasons set forth below, summary judgment in favor of TSC on Thompson's failure-to-promote claim is not warranted even under the McDonnell Douglas burden-shifting standard.

Under the McDonnell Douglas framework, the plaintiff first must establish a *prima facie* case of discrimination.  If the plaintiff succeeds, the burden of production then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action.  If the defendant meets this minimal burden, then the plaintiff must prove, by a preponderance of the evidence, that the articulated reason was mere pretext for discrimination.  411 U.S. at 802; Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108 (3d Cir. 1997).  Throughout this analysis, however, the burden of proving intentional discrimination rests with the plaintiff.  Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994); St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993).

**1. *Prima Facie* Case**

Here, TSC assumes, for purposes of summary judgment, that Thompson has established a *prima facie* case of sex discrimination with respect to her failure-to-promote claim.  TSC contends, however, that Thompson's discrimination claims cannot survive summary judgment because TSC has provided a legitimate, nondiscriminatory reason for its decision to terminate Thompson's employment and Thompson cannot point to any record evidence showing that this reason was a pretext for sex discrimination.  For the reasons set forth below, I

disagree.

**2. Defendant's Articulated Reason**

TSC has satisfied its minimal burden of articulating a legitimate, nondiscriminatory reason for promoting Young instead of Thompson – *i.e.*, that Young's managerial skills were superior to Thompson's. See Def.'s Br. Supp. (Docket No. 22) at 5; see also, e.g., Franklin v. Boeing Co., 232 F. App'x 408, 410 (5th Cir. 2007). Accordingly, the burden is on Thompson to offer evidence that TSC's proffered reason is pretextual.

**3. Pretext**

"To survive summary judgment when the employer has articulated a legitimate, non-discriminatory reason for its action, the plaintiff must 'point to some evidence . . . from which a fact-finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely or not a motivating or determining cause of the employers action.'" Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 644 (3d Cir. 1998) (quoting Fuentes, 32 F.3d at 764); see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000); Doe v. C.A.R.S. Protection Plus, Inc., 527 F.3d 358, 370 (3d Cir. 2008). To discredit the employer's articulated reasons (the first method of proving pretext), the plaintiff

> need not "produce evidence that necessarily leads to the conclusion that the employer acted for discriminatory reasons, nor produce additional evidence beyond [his] prima facie case." Id. (citations omitted). The plaintiff must, however, point to "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons [such] that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the proffered nondiscriminatory reason did not actually motivate the employer's action."

Simpson, 142 F.3d at 644 (quoting Fuentes, 32 F.3d at 764-65).

To show that discrimination was more likely than not a cause for the employer's action (the second method of proving pretext), "the plaintiff must point to evidence with sufficient

probative force that a factfinder could conclude by a preponderance of the evidence that" the plaintiff's gender "was a motivating or determinative factor in the employment decision." Id. Among other things, the plaintiff may show that the employer: (1) has previously discriminated against her; (2) has discriminated against other persons within the plaintiff's protected class or within another protected class; or (3) that the employer has treated more favorably similarly situated persons not within the protected class. Id. at 645 (citing Fuentes). The burden of proving pretext is a difficult one. Fuentes, 32 F.3d at 765.

After careful review of the parties' arguments and the record evidence, I find that there are genuine issues of material fact as to pretext. The evidence of pretext includes, inter alia, Luann Duplinsky's affidavit stating that she asked Hamar in 2007 why he wouldn't make Thompson the store manager and that Hamar told her "as long as he was the manager, there would never be a woman in charge of the [Follansbee] store." Although not contemporaneous with the promotion decision, Hamar's alleged comment relates directly to the Follansbee store manager position and Hamar's feelings about ever promoting Thompson to that position. If believed by the jury, the comment is evidence that Thompson's gender was more likely than not a motivating or determinative factor in Hamar's decision not to promote her to Store Manager in December 2008.[12]  Plaintiff also points, inter alia, to evidence of inconsistencies in TSC's reasons for the promotion decision such as TSC's shift in focus from Young's "significantly better [store] numbers" in its initial interrogatory responses to Young's managerial experience in its "supplemental" responses. Such contradictions and/or inconsistencies constitute evidence

---

[12] TSC makes much of the alleged fact that Hamar promoted three other women in his district to Store Manager positions in support of its argument that Hamar's decision was not gender-based. See, e.g., Def.'s Br. Supp. at 5 (citing Def.'s Statement Mat. Facts ¶ 16). Thompson, however, responds to this statement with citations to Hamar's deposition testimony showing that Hamar was not involved in the promotion of one of these managers, and that the other two women were the only individuals interested in the positions. See Pl.'s Resp. Statement Mat. Facts ¶ 16 (citing Hamar Dep. at 65-67). There is no evidence that Hamar ever hired a female store manager in the Follansbee store. Even if helpful to TSC, these issues are ones of weight and credibility for the jury to evaluate at trial.

from which a jury could find TSC's current articulated reasons unworthy of credence.

Because there are genuine issues of material fact as to whether TSC failed to promote Thompson because she is a woman, summary judgment in favor of TSC on the discriminatory failure-to-promote claim is unwarranted.

## C. Sex Discrimination – Termination from Employment -- Title VII and PHRA

Thompson also alleges that TSC fired her because of her gender in violation of Title VII and the PHRA.   TSC argues that it is entitled to summary judgment as to Thompson's discriminatory discharge claim because Thompson cannot establish a *prima facie* case of gender discrimination, and she cannot show that TSC's stated reason for her discharge was a pretext for such discrimination.   Again, I disagree.

### 1. *Prima Facie* Case

To establish a *prima facie* case of sex discrimination under Title VII, a plaintiff must show:  (1) she is a member of a protected class; (2) she is qualified for the position in question; (3) she suffered an adverse employment action; and (4) circumstances exist that give rise to an inference of unlawful discrimination.   Vernon v. A&L Motors, 381 F. App'x 164, 167 (3d Cir. 2010); Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410 (3d Cir.1999).   Here, TSC challenges Thompson's ability to meet the second and fourth prongs of this standard.   I address each of those elements in turn.

### a. Qualifications

TSC first argues that Thompson was not "qualified" for her assistant manager position because she left the store for 90 minutes without permission or proper supervision on February 5, 2009, and, therefore, was not performing her job duties in a satisfactory manner.   Def.'s Br. Supp. at 7.   This argument is without merit.   At the time of the February 5 incident, Thompson had held the assistant manager position for almost two years and had received positive performance reviews in that position.   Thompson's satisfactory performance of her job duties

over this long period of time clearly establishes her qualifications for the job.  See Jalil v. Avdel Corp., 873 F.2d 701, 707 (3d Cir. 1989).  Whether or not Thompson violated store policy on February 5 does not change this result.  As the Court of Appeals for the Third Circuit has long held, although insubordination or misconduct might be a legitimate reason for discharge, it does not render an otherwise qualified employee unqualified for purposes of the *prima facie* case.  Id.

### b.  Inference of Discrimination

TSC next argues that Thompson cannot meet the fourth prong of the *prima facie* case because she cannot show even "one male TSC employee" who engaged in similar misconduct but was not discharged.  Def.'s Br. Supp. at 7.  This argument mistakenly presumes that Thompson cannot establish a *prima facie* case unless she shows that TSC treated similar male employees more favorably.  As Third Circuit precedent makes clear, however, "evidence of favorable treatment outside the protected class is not an element of a *prima facie* case." Matczak v. Frankford Candy & Chocolate Co., 136 F.3d 933, 939 (3d Cir. 1997).  Although such evidence may suffice to satisfy the fourth prong, it is not required.  See id.  Rather, a plaintiff may establish the fourth element of the *prima facie* case by showing that she suffered an adverse action "under circumstances that give rise to an unlawful inference of discrimination." Waldron v. SL Indus., Inc., 56 F.3d 491, 494 (3d Cir. 1995).

Because TSC's fourth prong analysis is inaccurate and incomplete, its motion for summary judgment on this basis is denied.  In any event, Thompson has pointed to more than sufficient evidence from which a jury could infer gender discrimination, including, inter alia, Hamar's alleged comment to Luann Duplinsky.  Although TSC presently claims that Robinson made the decision to terminate Thompson's employment, it initially identified Hamar as the decisionmaker in its interrogatory responses.  Based on the record evidence, a jury reasonably could conclude that Hamar had a discriminatory animus against women and that he either played a role in the termination decision or otherwise influenced that decision.

**2. Defendant's Articulated Reason**

TSC has satisfied its minimal burden of articulating a legitimate, nondiscriminatory reason for discharging Thompson – *i.e.*, that she violated store policy by leaving the store for 90 minutes without permission and without a key carrier present.  See Def.'s Br. Supp. at 8; see also, e.g., Dowling v. Citizens Bank, 295 F. App'x 499, 503 (3d Cir. 2008).  Accordingly, the burden is on Thompson to offer evidence that TSC's proffered reason is pretextual.

**3. Pretext**

Viewing the record evidence in the light most favorable to Thompson, I find that there are genuine issues of material fact as to pretext.  The evidence of pretext includes, *inter alia*, the fact that TSC changed the identity of the decisionmaker from Hamar to Robinson in its interrogatory responses.   This fact not only casts doubt on the veracity of TSC's representations, it also could show that Hamar played a role in or otherwise influenced the termination decision.  Evidence that the alleged policies at issue historically had been enforced less strictly (or not enforced at all) at the Follansbee store coupled with Thompson's previously positive work history could also lead a jury to conclude that TSC's reason is so objectively implausible that TSC could not possibly have relied on it.  See, e.g., Fuentes, 32 F.3d at 765 n.8 ("[A] decision foolish, imprudent, or incompetent in comparison to the employer's usual mode of operation can render it implausible, inconsistent, contradictory, or weak.").

Because there are genuine issues of material fact as to whether TSC terminated Thompson's employment because she is a woman, summary judgment in favor of TSC on the discriminatory discharge claim is unwarranted.

**D.    Retaliation – Termination from Employment – Title VII and PHRA**

The anti-retaliation provision of Title VII provides:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a

charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).  Thompson alleges that she was fired by Defendant in retaliation for opposing unlawful discrimination – *i.e.*, for conveying to TSC's management her belief that she was not promoted to store manager because of her gender.  Pl.'s Br. Opp. (Docket No. 28) at 10.  Where, as here, there is no direct evidence of unlawful retaliation, the retaliation claim proceeds under the McDonnell Douglas burden-shifting framework set forth above.  See Moore v. City of Pittsburgh, 461 F.3d 331, 342 (3d Cir. 2006).

TSC argues that it is entitled to summary judgment as to Thompson's retaliation claim because she cannot establish a *prima facie* case.  "To establish a *prima facie* case of retaliation under Title VII, a plaintiff must tender evidence that: '(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action.'"  Moore, 461 F.3d at 340-41 (quoting Nelson v. Upsala Coll., 51 F.3d 383, 386 (3d Cir. 1995)); see also Andreoli v. Gates, 482 F.3d 641, 649 (3d Cir. 2007).  Although no one disputes that termination of employment is an adverse employment action, TSC argues that Thompson did not engage in a protected activity and that the evidence is in sufficient to establish a causal connection between any alleged protected activity and Thompson's discharge.  For the reasons set forth below, I disagree.

### a. Protected Activity

As set forth above, Title VII prohibits employers from discharging an employee because she has "opposed [a] practice made an unlawful employment practice under [Title VII]."  Pl.'s Br. Opp. at 10 (quoting 42 U.S.C. § 2000e-3(a)). Thompson contends that she "opposed" an unlawful employment practice – *i.e.*, gender discrimination – within the meaning of this section when she told Hamar that she understood why Orville Crawford was upset that a woman was

not promoted to store manager and that she agreed with Crawford. TSC argues that Thompson's comments do not rise to the level of protected "opposition" because "she merely agreed with the sentiments of a co-worker who asked a rhetorical question generally regarding the promotion of females to Store Manager." Def.'s Br. Supp. at 10. This argument is unpersuasive.

As the Court of Appeals for the Third Circuit has held, a formal complaint of discrimination is not the only acceptable indicia of the requisite protected conduct under Title VII. See Abramson v. William Paterson Coll. of N.J., 260 F.3d 265, 287-88 (3d Cir. 2001). Rather, acceptable forms of protected activity under the opposition clause also include "informal protests of discriminatory employment practices, including making complaints to management, writing critical letters to customers, protesting against discrimination by industry or society in general, and expressing support of co-workers who have filed formal charges." Id. (quoting Sumner v. U.S. Postal Serv., 899 F.2d 203, 209 (2d Cir. 1990)); see also Barber v. CSX Distribution Servs., 68 F.3d 694, 702 (3d Cir. 1995) (ADEA). As the United States Supreme Court recently explained, "'When an employee communicates to her employer a belief that the employer has engaged in . . . a form of employment discrimination, that communication' virtually always 'constitutes the employee's *opposition* to the activity.'" Crawford v. Metro. Gov't of Nashville & Davidson County, Tenn., 129 S. Ct. 846, 851 (2009) (citing with approval 2 EEOC Compliance Manual §§ 8-II-B(1), (2), p. 614:0003 (Mar. 2003)). The Supreme Court further stated that:

> [t]here is, then, no reason to doubt that a person can "oppose" by responding to someone else's question just as surely as by provoking the discussion, and nothing in the statute requires a freakish rule protecting an employee who reports discrimination on her own initiative but not one who reports the same discrimination in the same words when her boss asks a question.

Id.

TSC's characterization of Thompson and Crawford's remarks is flawed at the summary

judgment stage because TSC is construing the remarks in the light most favorable to TSC. Viewed in the light most favorable to Thompson, her comments, at the very least, create a triable issue of fact as to whether she engaged in protected activity. That is, a jury could reasonably conclude from the remarks and related evidence that Thompson expressed to Hamar her belief that TSC did not promote her to the Store Manager position because she was a woman. Indeed, TSC admits that Hamar himself was under the impression that Thompson believed she was not promoted because of her gender and that he thought Thompson and Crawford had discussed this belief. Cf. Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d 276, 292 (2d Cir. 1998) ("[I]mplicit in the requirement that the employer have been aware of the protected activity is the requirement that it understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by Title VII."). Because a reasonable jury could conclude from the record evidence that Thompson engaged in protected activity by implicitly or explicitly expressing to Hamar her belief that she was not promoted because of her gender, summary judgment in favor of TSC on this basis is inappropriate.[13]

In addition, Thompson notes that the Court of Appeals has adopted the "perception theory" of retaliation which holds that an employee satisfies the "protected activity" element of the *prima facie* case when the employer perceives the employee to be engaging in protected conduct, even if the employee's belief is not objectively reasonable. See Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 571-72 (3d Cir. 2002). As set forth above, Hamar admits he was under the impression after their December 2008 conversation that Thompson believed she was

---

[13] In its Reply Brief, TSC argues for the first time that even if Thompson did complain of discriminatory conduct to Hamar, her claim nevertheless fails because she did not have a reasonable belief that Hamar's actions violated Title VII. Def.'s Reply Br. at 6-7 (citing Clark Cnty. v. Breeden, 532 U.S. 268, 271 (2001)). This argument is unpersuasive, especially in light of my denial of summary judgment on Thompson's discriminatory failure-to-promote claim. Whether or not Thompson had an objectively reasonable, good-faith belief that the incident about which she complained violated Title VII is, at the very least, an issue of fact for the jury.

not promoted because she was a woman.  Further, Gerald Robinson testified that Hamar told him about Thompson's belief.  Thus, even if Thompson did not actually engage in protected activity, a reasonable jury could find that TSC perceived her as having done so.  See id. at 572.

For all of these reasons, TSC's motion for summary judgment as to Thompson's retaliation claim is denied on the protected activity issue.

### b.  Causal Connection

TSC next argues that even if Thompson engaged in protected activity, there is no causal connection between that activity and her discharge.  This argument also is without merit.  With respect to the causal connection prong, I must consider "whether a reasonable jury could link the employer's conduct to retaliatory animus."  Hare v. Potter, 220 F. App'x 120, 128 (3d Cir. 2007).  In assessing this prong, I may consider, *inter alia*, the "temporal proximity" between the protected activity and the alleged retaliatory conduct, and "the existence of a pattern of antagonism in the intervening period."  Id.  "Above all, however, 'each case must be considered with a careful eye to the specific facts and circumstances encountered.'"  Id. (quoting Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 n.5 (3d Cir. 2000)); see also Abramson, 260 F.3d at 289 (other types of circumstantial evidence potentially relevant to causal connection include, *inter alia*, evidence of inconsistencies or discrepancies in employer's explanations for termination).

The Court of Appeals for the Third Circuit has held that, "when only a short period of time separates an aggrieved employee's protected conduct and an adverse employment decision, such temporal proximity may provide an evidentiary basis from which an inference of retaliation can be drawn."  Fasold v. Justice, 409 F.3d 178, 190 (3d Cir. 2005); see also Marra v. Philadelphia Housing Auth., 497 F.3d 286, 302 (3d Cir. 2007) ("[A]n 'unusually suggestive' proximity in time between the protected activity and the adverse action may be sufficient, on its own, to establish the requisite causal connection.").  Here, Robinson testified that Hamar told

him about Thompson's belief that she was not promoted because of her gender at some point after he took over the store in January 2009 and before he terminated Thompson's employment on February 12, 2009. Thus, viewing the evidence in the light most favorable to Thompson, approximately one month passed between Robinson's discovery of the alleged protected conduct and the adverse employment action. I find that, in the context of this case, this relatively brief length of time is sufficient to raise a genuine issue of material fact as to whether Thompson has sufficiently demonstrated a causal link. See, e.g., Fasold, 409 F.3d at 189-90 (three-month interval provided evidentiary basis from which an inference of retaliation could be drawn); Yeager v. UPMC Horizon, 698 F. Supp. 2d 523, 548 (W.D. Pa. 2010) (one month created issue of fact as to whether causal link was established).[14]

### c. Pretext

In its principal brief, TSC argues only that Thompson cannot establish a *prima facie* case of retaliation. See Def.'s Br. Supp. at 9-11. TSC does not discuss the second two steps of the McDonnell Douglas analysis – legitimate reason and pretext – in the context of the retaliation claim. See id. Although Thompson outlines her alleged evidence of pretext in her opposition brief, and TSC responds to those arguments in its reply brief, TSC's focuses again on pretext in the context of Thompson's discriminatory discharge claim. See Def.'s Reply Br. at 10 (Conclusion). Even considering TSC's response in the context of the retaliation claim, however, I cannot agree that Thompson has failed to demonstrate a genuine issue of material fact as to pretext, especially in light of evidence such as the temporal proximity of the termination to Thompson's complaint and the severity of the discipline in relation to the nature of Thompson's infraction and her previously positive employment history with the company.

Because TSC has failed to adequately develop a pretext argument in opposition to the

---

[14] At trial, Thompson is also free to introduce other evidence of causal connection such as evidence, if any, of implausibilities, weaknesses, or inconsistencies in TSC's proffered legitimate reasons. See, e.g., Marra v. Philadelphia Hous. Auth., 497 F.3d 286, 301-302 & n.13 (3d Cir. 2007).

retaliation claim, and the evidence demonstrates genuine issues of material fact as to the merits of that claim, summary judgment on the retaliation claim is denied.

### III.  <u>CONCLUSION</u>

For all of these reasons, Defendant's Motion for Summary Judgment is denied.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

Deana Thompson,                       )
                                      )
            Plaintiff,                )
                                      )
      vs.                             )     Civil Action No. 10-234
                                      )
Tractor Supply Company,               )
                                      )
            Defendant.                )
                                      )

AMBROSE, Senior District Judge

## ORDER OF COURT

AND NOW, this 21st day of September, 2011, after careful consideration of the
submissions of the parties and for the reasons set forth in the Opinion accompanying this Order,
it is ordered that Defendant Tractor Supply Company's Motion for Summary Judgment (Docket
No. 21) is denied.

It is FURTHER ORDERED that counsel attend a pretrial/settlement conference
scheduled for Monday, October, 3, 2011, at 11:15 a.m. before the undersigned in Courtroom 3B
of the U.S. Post Office & Courthouse, 700 Grant Street, Pittsburgh, Pennsylvania.  Counsel
shall have settlement authority, and parties are to be either present or available by telephone.

                                    BY THE COURT:

                                    /s/ Donetta W. Ambrose
                                    Donetta W. Ambrose
                                    Senior U.S. District Judge